FILED
2017 Jul-24 PM 05:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **VANESSA A. BONNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| **AMEDISYS HOLDING, LLC., d/b/a** | ) **JURY TRIAL DEMANDED** |
| **AMEDISYS HOME HEALTH, and** | ) |
| **TANNER MEDICAL CENTER, INC.,** | ) |
| **d/b/a TANNER HEALTH SYSTEMS.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## COMPLAINT

**I.   INTRODUCTION**

1.   This is an action for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race and retaliation against the Plaintiff.  The suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (hereinafter "Title VII"); and 42 U.S.C. § 1981 (hereinafter "§ 1981"), which provide for relief against discrimination and harassment in employment on the basis of race and retaliation related thereto.  Specifically, Plaintiff alleges that Defendants discriminated against her based on her race, African-American, and unlawfully retaliated against her once she opposed the discrimination.  The Plaintiff requests a trial by jury of all issues triable by a jury.

**II.   STATEMENT OF JURISDICTION**

2.   The jurisdiction of this Court is invoked pursuant to its original jurisdiction, and under other statutory authority. This Court has original jurisdiction, pursuant to 28 U.S.C. §1331,

1

as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction pursuant to 28 U.S.C. §1343(a), as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and §1981, providing for injunctive and other relief against discrimination.

3. Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Calhoun County, Alabama, located in this judicial district.

### III. ADMINISTRATIVE PREREQUISITES

4. Plaintiff has fulfilled all conditions precedent prior to the institution of this action including those statutory requirements under Title VII. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of occurrence of the last discriminatory act. Plaintiff also timely filed this Complaint within ninety (90) days of her receipt of a Notice of Right To Sue issued by the EEOC.

### IV. PARTIES

5. Plaintiff Vanessa A. Bonner (hereinafter referred to as "Plaintiff" or "Bonner") is an African-American individual over the age of nineteen (19) years. Plaintiff is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of Amedisys Holding, LLC., d/b/a Amedisys Home Health.

6. Defendant employer, Amedisys Holding, LLC., d/b/a Amedisys Home Health (hereinafter "Amedisys" or "Defendant Amedisys"), is an entity subject to suit under § 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)(b).

7. Defendant Tanner Medical Center, Inc., d/b/a Tanner Health Systems (hereinafter

2

"Tanner" or "Defendant Tanner"), is an employer entity subject to suit under § 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)(b).

## V. STATEMENT OF FACTS AND CLAIMS

8. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and affect as if fully set forth herein and further states as follows:

9. Plaintiff is an African-American.

10. Plaintiff began her employment with Defendant Amedisys in November of 2001, as an Account Executive ("AE").

11. As an AE, Plaintiff was assigned to visit various clinics and act in the capacity of a marketing representative for Amedisys by building and maintaining professional relationships with the clinics in an effort to receive referrals.

12. One of the clinics that was within Plaintiff's assigned territory was Defendant Tanner.

13. Tanner, although headquartered in Georgia, had two locations in east Alabama for which Plaintiff was responsible in her capacity as AE for Amedisys.

14. On June 24, 2015, while conducting a visit to Tanner as a part of her duties as AE, Plaintiff was subjected to a racially offensive altercation with a white male employee of Tanner.

### Brief Summary of Events Leading to Racially Offensive Altercation

15. On June 17, 2015, the Charleston Church Massacre had taken place in South Carolina. The Massacre involved Dylan Storm Roof, a white supremacist who mercilessly killed nine (9) African Americans at a church in Charleston, South Carolina. The murders evolved into a nationwide debate concerning the confederate flag because of Roof's strong advocacy for it and multiple pictures of him prominently displaying the confederate flag and white supremacist

3

emblems.

16. On June 22, 2015, as the debate of the confederate flag grew increasingly heated with racial overtones, it reached a new height when the governor of South Carolina called for the removal of the flag from the state capitol building, stating, in part, that the flag "does not represent the future" of South Carolina.

17. On June 23, 2015, the governors of Virginia, Maryland and North Carolina announced plans to end their respective states from using or printing the confederate flag on specialty state license plates.

18. On June 24, 2015, the governor of Alabama ordered the removal of the confederate flag from a prominent memorial on state capitol grounds.

19. That same day, June 24, 2015, Plaintiff drove to Defendant Tanner's Woodland, Alabama location for a visit in her capacity as AE on behalf of Defendant Amedisys. Shortly after Plaintiff arrived, a white male employee of Defendant Tanner entered the location as well. The employee was a Physicians Assistant ("PA") with managerial responsibilities. Plaintiff knew this employee from past visits with Tanner and had never had an unpleasant experience with him. However, on this day, Plaintiff immediately knew something was wrong with PA.

20. When PA saw Plaintiff, he immediately yelled at her in an angry manner and said "Hey you! I want to see you now!" Plaintiff immediately felt a sense of apprehension and fear but walked toward PA to determine if everything was alright. PA led Plaintiff to his office and, in a harsh tone, asked Plaintiff "would you be offended if I put a confederate flag on my desk." Plaintiff, who now was able to discern that the reason for PA's anger was the racially sensitive debate of the confederate flag and its removal from various state buildings and grounds, including from Alabama

that very morning, told PA that "yes, I would be offended." PA became increasingly angered, and Plaintiff, in an effort to defuse the situation, decided to leave the Tanner location. Plaintiff felt offended by the interaction and topic, frightened as to how the confrontation took place, and also how she was treated. Plaintiff was the only African American in the building at the time and was singled out solely because of her race.

21. When Plaintiff left, she drove to Defendant Tanner's Wedowee, Alabama location for her next scheduled visit for the day. However, Plaintiff was still so shaken by what had occurred moments earlier at the Woodland location, she felt compelled to report what happened to a Tanner supervisor as soon as possible.

22. When Plaintiff arrived at the Wedowee location, she told a white male supervisory doctor about everything that had taken place at the Woodland location. Plaintiff informed the doctor that she felt the confrontation was inappropriate and believed that she was singled out because of her race. In response to Plaintiff's complaint to him and with clear agitation, the doctor told Plaintiff that "maybe you should do some research on the confederate flag, ya'll aren't the only race that's been mistreated." Plaintiff was appalled by the doctor's response and felt alone, bewildered and at a loss for words. Because Plaintiff was looking distraught, an employee of Tanner asked Plaintiff what was wrong. Plaintiff, still in a state of disbelief, told the employee that she believed she had just experienced disparate treatment because of her race.

23. The following day, on June 25, 2015, Plaintiff reported everything that had happened to her supervisors at Defendant Amedisys. Plaintiff told her supervisors that she felt so uncomfortable that she did not want to go back to Defendant Tanner's Woodland location as a result.

24. Plaintiff's Amedisys supervisors removed Plaintiff from the Woodland location and

Plaintiff continued to service the Wedowee location.

25. However, within approximately two weeks, Plaintiff was told by her Amedisys supervisors that Defendant Tanner informed them that because Plaintiff expressed her belief of being racially discriminated with an employee at the Wedowee location, she was no longer welcome as an Amedisys Account Executive at any Tanner location. Amedisys informed Plaintiff that it agreed with Tanner and promptly removed her as Account Executive from the remaining Tanner location.

26. Plaintiff was confused and felt betrayed. Plaintiff believed she was being punished although she was the victim. The Tanner locations produced valuable referrals to Plaintiff in the past which helped her meet mandated quotas.

27. Plaintiff complained that she would not be able to meet her quotas to Amedisys. Amedisys, in turn, reduced Plaintiff's quota by a minimal amount for approximately three (3) months. Then, Amedisys began increasing Plaintiff's quota at a fast rate to levels that became higher than when she had the Tanner locations.

28. After the incident which took place, then being terminated from the Tanner accounts, Plaintiff noticed a distinct change in how she was treated by Amedisys management. Plaintiff experienced heightened suspicion, scrutiny and isolation. Plaintiff believed her treatment was because Amedisys was embarrassed by the situation and blamed Plaintiff.

29. Amedisys began giving Plaintiff negative performance reviews because she was unable to meet the increasing quotas and treating her differently from other workers who had not complained of racial discrimination. Specifically, Amedisys would nit-pick at Plaintiff on a weekly basis by delaying expense reimbursements and Plaintiff's requests to be off or for other accommodations.

30. Plaintiff was never reassigned locations to make up for the Tanner locations. Instead, Amedisys replaced Plaintiff by assigning a white male to the Tanner accounts who had not complained about disparate treatment.

31. As such, Plaintiff was at a perpetual disadvantage when attempting to meet her quotas. Additionally, Plaintiff was working part-time, but Amedisys demanded she have the same quotas as full-time employees who had not complained about disparate treatment.

32. Each month thereafter, Plaintiff struggled to meet quotas. In early 2017, Plaintiff was told that she needed to pick up her performance and her job was threatened. In May, 2017, Plaintiff was terminated from Amedisys.

33. Since complaining of disparate treatment because of her race, Plaintiff was retaliated against and endured a retaliatory hostile work environment until she was terminated.

34. Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, loss of employment and employment opportunities, employment benefits and loss of enjoyment of life.

**COUNTS I & II**
**Count I - Race Discrimination**
**Count II - Retaliation**
**Against All Defendants**
**Pursuant to 42 U.S.C. § 2000e, et seq., and**
**42 U.S.C. § 1981**

35. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

36. Plaintiff is an African-American.

37. Plaintiff was treated differently than her white counterparts solely because of her race.

38. Specifically, Plaintiff was faced with a racially hostile confrontation when she was singled out and aggressively confronted by an employee of Defendant Tanner concerning the confederate flag. More specifically, on the day that the confederate flag was removed from a prominent memorial on Alabama state grounds, Plaintiff was angrily confronted by a white male employee of Defendant Tanner who, in a harsh tone, demanded to know whether Plaintiff would be offended if he placed a confederate flag on his desk. When Plaintiff answered in the affirmative, the white male became increasingly agitated until Plaintiff removed herself from the situation and left the premises.

39. The white male, who was a Physicians Assistant ("PA") with supervisory duties, confronted Plaintiff because she was the only African American in the building. The PA did not confront white employees in an angry manner concerning the confederate flag. Plaintiff was treated differently solely because of her race.

40. When Plaintiff went to Defendant Tanner's Wedowee location, she immediately complained to the PA's supervisor. The supervisor, who is also a white male, told Plaintiff that she needed to do her research about the confederate flag and, furthermore, her race was not the only one to ever be mistreated.

41. Plaintiff then complained to her supervisors at Defendant Amedisys and asked to be removed from the Woodland location of Defendant Tanner.

42. Within approximately two (2) weeks, Defendant Tanner terminated any remaining association with Plaintiff. Defendant Amedisys agreed with Tanner, and told Plaintiff as much.

43. Plaintiff's association with Tanner was terminated because of her complaints of racial discrimination. Defendant Amedisys condoned and/or ratified the actions of Defendant Tanner when

it terminated its association with Plaintiff. Defendants' actions and/or inactions constituted retaliation. Additionally, Plaintiff was replaced by a white male on the Tanner accounts.

44. Terminating Plaintiff's association with Tanner adversely impacted Plaintiff because Tanner made up a large and valuable portion of her work territory. Plaintiff relied on the referrals from Tanner to meet her Amedisys quotas.

45. Defendants are liable for the actions and/or inactions of their managers and agents.

46. Defendants knew or should have known of the racial discrimination and retaliation Plaintiff experienced. Defendants failed to take prompt, effective remedial action. Rather, shortly after Plaintiff was removed from one Tanner location, per her request, Tanner and Amedisys terminated the remaining location's association with Plaintiff. Defendants are thus liable for racial discrimination and retaliation under Title VII and Section 1981.

47. As a result of Defendants' actions, Plaintiff has suffered harm including, but not limited to, loss of employment, loss of employment opportunities, denial of raises, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including depression, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**COUNTS III & IV**
**Count III - Retaliatory Hostile Work Environment**
**Count IV - Retaliatory Discharge**
**Against Defendant Amedisys**
**Pursuant to 42 U.S.C. § 2000e, et seq., and**
**42 U.S.C. § 1981**

48. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set forth herein and further states as follows:

49. After complaining to her Amedisys supervisors about the disparate treatment she experienced, Plaintiff was shocked when Amedisys told Plaintiff that they agreed with Defendant Tanner's decision to terminate any remaining relationship it had with Plaintiff.

50. Defendant Amedisys supervisors told Plaintiff that her quotas would be adjusted based on her loss of Tanner business. However, the adjustment was menial and temporary. Within three (3) months, Plaintiff's quota was increased and continued to increase to higher levels than when she had Tanner. Additionally, Amedisys supervisors engaged in a series of retaliatory actions against Plaintiff. Defendant's conduct after Plaintiff complained about racially disparate treatment, included but was not limited to 1) increased scrutiny of Plaintiff; 2) isolation of Plaintiff; 3) delayed expense reimbursement; 4) delayed correspondence concerning time off; 5) heightened suspicion of Plaintiff; 6) continual increase of Plaintiff's quotas; 7) unfair treatment, including making Plaintiff's quota at or higher than her white counterparts who had not complained about disparate treatment even though Plaintiff was part-time and the white counterparts were full-time; 8) placing Plaintiff on performance improvement plans, threatening her job and giving negative evaluations/write-ups for not reaching excessively high quotas. The retaliatory actions of Defendant were continual and occurred on a weekly basis.

51. Defendant's conduct culminated when Plaintiff was terminated. Defendant's stated reason was pretextual and based on the result of the retaliatory conduct described above.

52. Defendant's conduct was severe, pervasive, and humiliating enough to adversely affect the terms and conditions of Plaintiff's employment and personal life. Defendant's actions were such that a reasonable person would find them hostile or abusive and creating an environment of retaliation. Plaintiff subjectively perceived Defendant's conduct as such.

53. Defendant is liable for the actions and/or inactions of its managers and agents. Defendant ratified and/condoned the actions and/or inactions of its managers and agents.

54. Defendant knew or should have known of the retaliatory conduct toward Plaintiff and did not take prompt, effective remedial action. Defendant is thus liable under Title VII for the retaliatory discharge and hostile environment experienced by Plaintiff.

55. As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment, loss of employment opportunities, denial of raises, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including depression, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination by Defendants is violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2. Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendants to make Plaintiff whole by awarding Plaintiff

back-pay (plus interest), reinstatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

_____
Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*
**WIGGINS, CHILDS, PANTAZIS, FISHER
& GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

**AMEDISYS HOLDING, LLC
c/o CT CORPORATION SYSTEM
2 NORTH JACKSON ST., SUITE 605
MONTGOMERY, AL 36104**

**TANNER MEDICAL CENTER, INC.**
**c/o JEFF STUART, REGISTERED AGENT**
**76 COUNTY RD 64**
**WOODLAND, AL 36280**